## H. S. HOOKER v. SUTCLIFF & OWEN.

1. TRUST-DEED. *Granting clause. Instruction. Book account. Intent.*

    Where a merchant, who operates plantations, gives a trust-deed, which, without embracing the property in his store, conveys his mules, farming implements and the crops to be grown on said plantations, and "all book accounts and notes that are now due me or may become due me during the year from my tenants and employes, or otherwise during the year," it will not embrace indebtedness pertaining to the mercantile business. Holding it to extend beyond debts due in the planting business would be contrary to the obvious intent of the parties, and would, moreover, render the clause void for indefiniteness.

2. SAME. *Debts not embraced. Collection thereof. Evidence of fraud.*

    Since such trust-deed does not embrace debts due in the grantor's mercantile business, his subsequent collection of them and use of the money is not competent to throw light on the character of the trust-deed, as being fraudulent or not.

3. WAIVER OF LIEN BY MORTGAGEE. *Evidence of fraud. Unsecured creditors.*

    The waiver by a mortgage creditor of his lien on specific property, in order that the grantor may apply it to the payment of another creditor, does not prejudice unsecured creditors of such grantor, and they cannot complain of it as fraudulent.

4. MORTGAGE OF STOCK AND CROPS. *Use of crop. Maintaining stock. Fraud.*

    Where a trust-deed covers, among other things, horses and mules on plantations and the crops to be grown thereon, the reasonable use of such crops by the grantor in feeding the stock is permissible, and other creditors of his cannot predicate on this a charge that the trust-deed is fraudulent.

5. TRUST-DEED. *Attachment. Claimant's bond. Subsequent conduct. Evidence.*

  Where property embraced in a trust-deed has been attached at the suit of
  creditors of a grantor, a claimant's bond, executed by the trustee, stands
  in lieu of the property, and the subsequent irregular disposition of the
  same by the claimant will not render the trust-deed fraudulent as to
  such attaching creditors.

FROM the circuit court of Leflore county.

HON. R. W. WILLIAMSON, Judge.

The facts material to be considered are as follows: One
Ullendorff leased and cultivated several plantations in Holmes
and Leflore counties, and was the owner of the mules and
horses and farming implements thereon. He also operated,
in connection with them, a store. He became indebted to
M. Levy & Sons, commission merchants in New Orleans, La.,
for advances, and, in 1889, to secure them, executed a deed
of trust, which he renewed in 1890, and also in 1891. The
trust-deed last given secured two promissory notes for ten
thousand dollars each, due December 1, 1891, and January 1,
1892, respectively, and any additional advances that might
be made to Ullendorff by M. Levy & Sons. On June 1, 1892,
upon a settlement, Ullendorff owed Levy & Sons an alleged
balance of more than fourteen thousand dollars. The trust-
deed, which was duly recorded, covered the mules and horses
and all the farming implements on said plantations, the crops
of 1891, and certain other specific personal property, and also
his store-house and lot. After enumerating the mules and
horses, the trust-deed also conveyed accounts and notes by
the following description: "All my book accounts and notes
that are now due me or may become due me during the year
from my tenants and employes, or otherwise during the
year."

In the fall of 1891, Ullendorff was also largely indebted
to other creditors, mostly for goods purchased in his mer-
cantile business, and, in December, 1891, sundry creditors
sued out attachments against him, and levied upon his stock
of merchandise, his store-house and certain personal prop-

erty.    Among other creditors who sued out attachments were the appellees, Sutcliff & Owen, who recovered judgment by default against Ullendorff.    Among other things levied upon by them, were forty-four bales of cotton, covered by the aforesaid trust-deed to M. Levy & Sons, and to these, H. S. Hooker, the trustee in the trust-deed, propounded his claim.    The claimant's issue was tried by consent before the court, without a jury, and judgment rendered in favor of the plaintiffs, and from this judgment the claimant appeals.

It was shown in evidence that Ullendorff, after executing the trust-deed aforesaid to M. Levy & Sons, continued to carry on his mercantile business, and used his cash sales and collections in said business.    It was contended, on behalf of plaintiffs, that the collection of these debts, which, it is claimed, were covered by the trust-deed to M. Levy & Sons, was evidence tending to show its fraudulent character.    The opinion contains a further statement of the case.

*Rush & Gardner*, for appellant.

There is nothing on the face of the trust-deed to render it void.    It is valid so far as it effects the property it describes. It is not fraudulent *per se* to mortgage notes and accounts due and to become due within a given time.    Creditors have no cause to complain.    It is true that, because of their convenient nature and for purposes of specific indentification, they are usually delivered to the mortgagee or pledgee, but, if the latter is willing to risk the description of notes and accounts as given for identification, no one else can complain. Unsecured creditors cannot complain if the mortgagor should collect such notes and accounts and apply them to the payment of other debts than the one secured.    All that can be urged against such a provision is its questionable validity as against third parties, who might obtain an interest in the notes and accounts, because of the meager and possibly insufficient description.    If the trust-deed be insufficient to convey the notes and accounts, it would still hold good as to all other property

conveyed. *Kelly* v. *Reid*, 57 Miss., 89; *Nicholson* v. *Karpe*, 58 *Ib.*, 34.

The trust-deed, on its face, shows that it was given for farming purposes It did not embrace any of the mercantile assets. Ullendorff's dealings with the notes and accounts cannot, therefore, affect the trust-deed. The shipment of cotton-seed to the Union Oil Mills was to pay an honest debt, and creditors other than Levy & Sons cannot complain.

There was nothing fraudulent in allowing Mrs. Ullendorff to have possession of the property. The claimant had given bond for its forthcoming. Nor was there any thing fraudulent or improper in the use of the mortgaged crops to maintain the mules and horses. *State* v. *Hemingway*, 69 Miss., 491.

*Hooker & Wilson*, on the same side.

The trust-deed is not fraudulent on its face, and there is an entire absence of any evidence of actual fraud intended or attempted. It may be true that the conveyance of the debts to become due is invalid for want of a sufficient description, but the collection and use of a small part of the claims due on his mercantile books is neither a fraud in law nor evidence of a fraudulent intent. The sole purpose of this provision was to secure Levy & Sons in their advances, and to make sure their claim against the crops raised by the tenants. The intention of the parties was that the debts of the tenants should be paid out of the crops to be raised by them that year. It was not contemplated that the trustee should, in case of default of the payment of the notes, seize the book accounts and notes and sell them at public outcry.

The case has no analogy to one where a stock of merchandise is mortgaged and replenished, and the goods sold and the proceeds appropriated. We submit that no conduct is shown, on the part of Ullendorff, not consistent with the utmost good faith.

The use of a small part of the mortgaged property in payment of another debt, with the consent of the mortgagee,

cannot be complained of by others. Certainly it cannot be the basis of a charge of fraud. There was nothing fraudulent in the conduct of the claimant, after giving bond for the forthcoming of the property, to leave it in possession of Ullendorff's wife to be used on the plantations, for the lease of which he was liable. Retention of possession by the mortgagor, even after condition broken, under our registry laws is not evidence of fraud. Jones on Chattel Mortgages, § 369; *Hilliard* v. *Cagle*, 46 Miss., 309. Even if the fact relied on was competent to be shown as an evidence of fraud, there is no proof that there was ever any understanding or agreement on the part of M. Levy & Sons at the time the mortgage was given that such use or disposition of the property should be made. The fraudulent intent must exist at the time the mortgage is executed, and be shared in by both mortgagor and mortgagee. Jones on Chattel Mortgages, § 340.

*Miller, Smith & Hirsh*, on the same side.

If the trust-deed is void as to the notes and accounts, this will not render it fraudulent as to creditors. They remain unaffected, and are at liberty to reach such notes and accounts unhindered by the deed of trust. If the notes and accounts are properly described and conveyed, it devolves on the attaching creditors to show that the use of a small portion of them operates as a fraud on them. See *State* v. *Hemingway*, 69 Miss., 491.

But we submit that, since the deed of trust did not embrace the mercantile assets, Ullendorff had the right to make sales of his goods, and use the money arising therefrom in his business. The subsequent disposition of the cotton seed could not affect the mortgage executed prior to the maturity of the crop. *Summers* v. *Roos*, 42 Miss., 749; Burrill on Assignments, § 351; Cobbey on Chattel Mortgages, § 770.

The conduct of the trustee, after he acquired possession of the property under bond, cannot in any manner prejudice

the rights of the beneficiaries. Whatever interest the attaching creditors acquired was created by the attachment, and the condition of affairs at that time is the test of their rights.

*A. H. Longino*, for appellees.

The conveyance of the notes and accounts to become due was void. They had no actual or potential existence. A person cannot grant that which he has not. 23 How. (U. S.), 117; 94 U. S., 382; 22 Wall. (U. S.), 513; Herman on Chattel Mortgages, 94; *Everman* v. *Robb*, 52 Miss., 653; *McCown* v. *Mayer*, 65 *Ib.*, 537.

The trust-deed being void in part, is void *in toto*. *Harney* v. *Pack*, 4 Smed. & M., 229.

Ullendorff was permitted by M. Levy & Sons to retain possession of the mortgaged property, to dispose of the cotton-seed for his own use, and to collect the debts and use the money in the usual course of his business. This stamps the trust-deed as fraudulent. 22 Wall., 513; Waite on Fr. Con., 348; Herman on Chattel Mortgages, 230; *Harman* v. *Hoskins*, 56 Miss., 142; *Joseph* v. *Levi*, 58 *Ib.*, 843; *Britton* v. *Criswell*, 63 *Ib.*, 394.

COOPER, J., delivered the opinion of the court.

We are unable to concur in the result reached in this case. We can see nothing in the mortgage, and nothing done under it, upon which to rest the finding, necessarily involved in the judgment, of fraud in fact or in law. The security did not cover the stock of merchandise owned by Ullendorff, and it remained at all times subject to the demands of his creditors. So much of the mortgage as relates to the book accounts and notes is either confined to those which might become due from the tenants and employes of Ullendorff on the plantations, the crops of which were conveyed by the deed, or else the provision is ineffectual for want of certainty in their description. Ullendorff was the lessee of a number

of farms, and the owner of the stock and implements thereon. The manifest purpose of the conveyance was to give security upon the personal property then on these farms and the crops to be grown thereon during the year, and upon the sums that might be due to the grantor during the year from those engaged by him in and about the business of making such crops. It is true that Ullendorff was also the owner of a small stock of goods, and was engaged, to a limited extent, in business as a merchant. But the property invested in that business was not covered by the mortgage; and to hold that the " book accounts " referred to in the mortgage were those which should accrue in the mercantile business, would be doing violence to the evident purpose of the parties. But the effect of disassociating these words from the planting operations and applying them to any and all accounts which might become due to the grantor during the year, would be to render this provision nugatory by reason of its generality and want of definiteness, and this would avail nothing in support of the judgment of the court below; for, since no " book accounts " would, under this construction, pass by the deed, the collection and use of them by Ullendorff would not be a dealing by him with the mortgaged property, and such action on his part could not illustrate the character of the mortgage, of which they formed no part.

Aside from the collection of the account and use of the money so collected by Ullendorff, the other grounds of attack upon the mortgage are: (1) That Levy & Sons permitted Ullendorff to ship to the Union Oil Mill the seed of the cotton grown on the places, and to apply the proceeds in part to a debt due said mills; (2) that the corn grown during the year and covered by the mortgage was used, before the attachments were sued out by other creditors, in feeding the stock upon the places; and, (3) that after the attachments had been levied on the property, the trustee of Levy & Sons executed forthcoming bonds therefor, and afterwards, and with-

out a sale having been made, turned the mules and corn over
to Mrs. Ullendorff, by whom the corn had been consumed
and the stock constantly used.

There is nothing in either or all of these things of which
creditors can justly complain. Surely it cannot be contended
that one creditor is defrauded because the mortgagee waives
his lien upon specific property in favor of another creditor
whose debt is equally meritorious as that of any other cred-
itor. No harm was thereby done to the plaintiffs, whose
claim was not more just than that of the creditor whose
debt was paid by the sale of the seed. They had no lien
upon the seed, and no right of theirs was diminished or im-
paired by the waiver of their lien by Levy & Sons or by the
sale by Ullendorff.

The second objection above noted in not tenable. If the
trustee had been in possession of the stock and corn it would
have been his duty to have used the corn in the maintenance
and preservation of the stock. It is not shown that an im-
provident or unnecessary use of the corn was made, and that
which was done was but in accord with the universal custom
of all owners of property of like description.

The disposition made by Levy & Sons of the property,
after they had given bond for its forthcoming to answer the
demands of attaching creditors, cannot serve to impair or de-
feat the mortgage under which they claim. The bond stands
in lieu of the property as to these creditors, for, upon judg-
ment in their favor, Levy & Sons must return the property
or pay its value as found by the jury.

*The judgment is reversed, and cause remanded.*